UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINNEA MENIN,<br>individually and on behalf of all others<br>similarly situated,<br>　　　　　　Plaintiff,<br><br>v.<br><br>STAR MARKETS COMPANY, INC.,<br><br>　　　　　　Defendant. | Case No. 23-cv-11918-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                              September 9, 2024

## I.  Introduction

Plaintiff Linnea Menin ("Menin") has filed this putative class action lawsuit against Defendant Star Markets Company, Inc. ("Star Markets") alleging a violation of the Telephone Consumer Protection Act, (the "TCPA"), 47 U.S.C. § 227, *et seq*. D. 17.  Star Markets has moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6).[1] D. 26.  Star Markets has also moved to stay discovery pending the resolution of the motion to dismiss. D. 28.  For the reasons stated below, the Court DENIES the motion to dismiss, D. 26, and DENIES the motion to stay discovery as moot, D. 28.

---

[1] Star Markets had also moved to dismiss the amended complaint's request for injunctive relief but as Menin has now withdrawn that request, D. 30 at 10, the Court dismisses that portion of the motion to dismiss as moot.

1

**II.     Standard of Review**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal allegations are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

**III.    Factual Background**

The following facts are drawn from Plaintiff's amended complaint, D. 17, and are accepted as true for the purpose of resolving the motion to dismiss.

In June 2023, Menin alleges that she received a text message from Star Markets with a "Weekly Ad" purporting to advertise and promote their products. D. 17 ¶ 9. The text message had an opt-out provision if Menin texted "STOP." Id. Menin replied "STOP" to the text message on June 23, 2023 and received a response the same day confirming that Menin opted out of any promotional text messages. Id. ¶¶ 9, 10. Menin alleges that despite this request, she received additional promotional text messages on June 30, 2023, July 7, 2023 and July 14, 2023. Id. ¶¶ 9, 11. Menin alleges that she again replied "STOP" on July 7, 2023 and again received a

response the same day confirming that Menin opted out of any promotional text messages. Id. ¶ 9.

## IV.     Procedural History

Menin instituted this action on August 22, 2023. D. 1. Star Markets moved to dismiss the initial complaint and to stay discovery pending the motion to dismiss. D. 7, 9. Menin then filed an amended complaint. D. 17. In light of the amended pleading, the Court denied Star Markets's motion to dismiss the initial complaint and motion to stay discovery as moot. D. 33. Star Markets has now moved to dismiss the amended complaint, D. 26, and stay discovery pending the motion to dismiss, D. 28. The Court heard the parties on the pending motions and took these matters under advisement.[2] D. 40.

## V.      Discussion

### A.     The TCPA Provides a Private Right of Action for a Violation of 47 C.F.R. 64.1200(d)

The Court begins by addressing Star Markets's argument that the amended complaint should be dismissed because the TCPA does not provide a private right of action for violations of the Federal Communications Commission ("FCC") implementing regulations Section 64.1200(d). D. 27 at 7-10. Broadly speaking, § 64.1200(d) mandates that companies who engage in telemarketing to residential telephone subscribers institute "procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity" and that those procedures meet certain "minimum standards" 47 C.F.R. § 64.1200(d). Star Markets asserts that § 64.1200(d) was enacted pursuant to the "technical and procedural standards" § 227(d) of the TCPA, which does not contain a private right of action. D. 27 at 7-10.

---

[2] The Court has also considered the parties' post-hearing notices of supplemental authority, D. 41; D. 43; D. 44, and Star Markets' response to Menin's notices, D. 45, in considering this motion to dismiss.

Specifically, Star Markets argues that the FCC recognized in its order promulgating regulations pursuant to § 227(d)(3)(A) of the TCPA, that this requirement was adopted "in our rules, 64.1200(d)." D. 27 at 8 (citing In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C.R. 8752, 8779 (1992), 1992 WL 690928, at *1 (Oct. 16, 1992)). Those regulations concern identifying the identity of the business, individual or other entity initiating the call and identifying the phone number or address of same for all artificial or prerecorded telephone messages. 47 U.S.C. § 227(d)(3)(A). Menin maintains that § 64.1200(d), was promulgated pursuant to the protection of subscriber privacy rights in § 227(c), which enacts a private right of action for anyone who receives more than one call within a year from the same entity in violation of these regulations. See D. 30 at 2-4; 47 U.S.C. § 227(c)(5).

The First Circuit has not addressed this issue squarely.[3] At least two other Circuits, the Sixth and Eleventh Circuits, lend support to Menin's position. See Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1265 (11th Cir. 2019) (recognizing that § 64.1200(d) requires companies that engage in telemarketing to have a "written policy for maintaining an internal do-not-call list, train their personnel on its 'existence and use," put people on the list when they ask" and that the TCPA creates a private right of action for a "violation of these regulations"); Charvat v. NMP, LLC, 656 F.3d 440, 449 (6th Cir. 2011) (recognizing that "[s]ubsection [227](c) and its accompanying regulations in 47 C.F.R. § 64.1200(d) impose minimum procedures for maintaining a do-not-call list that apply to *all* calls—live or automated—initiated for telemarketing purposes") (emphasis in original).

---

[3] The First Circuit, however, has noted that a plaintiff asserted his "claims under § 227(c)(5) of the TCPA, which allows a private right of action for violations of the national do-not-call registry regulations" and cited regulations 47 U.S.C. § 64.1200(c)-(d). Jones v. Montachusetts Reg'l Transit Auth., No. 22-1569, 2023 WL 9233970, at *1 (1st Cir. Nov. 30, 2023).

Moreover, other district courts who have addressed this issue, including two in this Circuit, support Menin's position. See Rosenberg v. LoanDepot.com LLC, 435 F. Supp. 3d 308, 324-25 (D. Mass. 2020) (reasoning that "[t]he available record indicates that § 64.1200(d) was promulgated under § 227(c) and contains a private right of action" because "§ 64.1200(d), like § 227(c), is concerned principally with the protection of individual privacy rights"); Doane v. Benefytt Techs., Inc., No. 22-cv-10510-FDS, 2023 WL 2465628, at *6 & n.10 (D. Mass. Mar. 10, 2023) (recognizing that "[v]iolations of regulations [§64.1200(d)] promulgated under the TCPA give rise to liability under 47 U.S.C. § 227(c)(5)"). The Court recognizes that a few district courts have declined to recognize a private right of action for violations of § 64.1200(d) holding that these regulations arise under section 227(d). See Worsham v. Travel Options, Inc., No. 14-cv-2749-JKB, 2016 WL 4592373, at *7 (D. Md. Sept. 2, 2016) (holding that "§ 64.1200(d)(4) is more appropriately viewed as setting procedural standards and, therefore, within the realm of the TCPA's subsection d, for which no private right of action exists"), aff'd, 678 F. App'x 165 (4th Cir. 2017); Burdge v. Ass'n Health Care Mgmt., Inc., No. 10-cv-00100, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (holding that there is no private right of action under § 64.1200(d)(4) because the regulation arises under 47 U.S.C. § 227(d)).

This Court, however, is persuaded by the majority rule that the purpose of the internal do-not-call provisions and policies in § 64.1200(d) comport with § 227(c), which is "concerned principally with the protection of individual privacy rights." See Rosenberg, 435 F. Supp. 3d at 324. The courts that have held no private right of action exists have focused on one provision, § 64.1200(d)(4), which it characterized as "technical and procedural in nature" and not part of the broader scheme of § 64.1200(d). See, e.g., Burdge, 2011 WL 379159, at *4. Section 227(d) specifically addresses identification of callers but does not otherwise address "methods and

5

procedures for protecting the privacy rights" for residential subscribers that do not want to be called as discussed in § 227(c).  Compare  47 U.S.C. § 227(d)  with 47 U.S.C. § 227(c).  Section 64.1200(d) encompasses more "substantive requirements" such as written policies for internal do-not-call procedures and the recording and disclosure of do-not-call requests which more aptly comports with the mandate in § 227(c) to adopt do-not-call regulations.  See Cunningham v. Rapid Response Monitoring Servs., Inc., 251 F. Supp. 3d 1187, 1200–01 (M.D. Tenn. 2017) (reasoning that § 64.1200(d) as a whole "fit[s] cleanly under the rubric of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations").  For these reasons, the Court DENIES Star Markets' motion to dismiss the amended complaint on the ground that § 64.1200(d) fails to provide a private right of action.

      B.      **TCPA Violation is Plausibly Pled**

Alternatively, Star Markets argues that the amended complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  D. 27 at 10-18.  Section 64.1200(d) prohibits initiating "any call for telemarking purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."  47 C.F.R. § 64.1200(d).  Section 64.1200(d) lists certain "minimum standards" that the procedures must meet prior to a telemarketer initiating a call.  See id.  Menin alleges violations of three of those standards:  (1) providing a written policy for maintaining a do-not-call list (§ 64.1200(d)(1)); (2) training personnel in the existence and use of the do-not-call list (§ 64.1200(d)(2); and (3) recording a do-not-call request and ensuring that the request is honored in a reasonable time, not to exceed thirty days (§ 64.1200(d)(3)).  D. 17 ¶ 37.

To allege a violation of § 64.1200(d), a plaintiff must show that she is a residential telephone subscriber, that received a telemarketing call,[4] and that an entity placing the calls failed to institute the proper procedures prior to the initiation of the call. Laccinole v. Rocket Mortg., LLC, 609 F. Supp. 3d 68, 73 (D.R.I. 2022). Menin alleged that she uses her cell phone for "personal purposes and the number is [Menin's] residential telephone line." D. 17 ¶ 21. That allegation is "adequate for the purposes of pleading." Rosenberg, 435 F. Supp. 3d at 324.

### 1. Menin Has Sufficiently Alleged That Star Markets Has Not Instituted Proper Written Procedures

Star Markets argues that Menin has not sufficiently alleged a violation of § 64.1200(d)(1) because Menin has not pled that she "requested a copy of the [defendant's] do-not-call list or DNC policies." D. 27 at 15. The Court disagrees. Section 64.1200(d) mandates that a company maintain "a written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R. § 64.1200(d)(1). Requesting a company's internal procedures can "bolster" a claim but this is not a pleading requirement. See Barr v. Macys.com, LLC, No. 22-cv-07867-ALC, 2023 WL 6393480, at *4-5 (S.D.N.Y. Sept. 29, 2023) (recognizing a plaintiff requesting a company's written policies can "bolster" a claim for a violation of 64.1200(d), but concluding that plaintiff failed to state a claim for numerous reasons).

---

[4] Star Markets asserts that it only "assumes" that the "FCC rules apply to text messages, as well as voice calls" for the purposes of this motion. D. 27 at 10 n.3. Although the TCPA refers to "calls," the "overwhelming weight of precedent holds that text messages are calls for the purposes of the TCPA." See Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195, 198 (D. Mass.), motion for reconsideration denied, 541 F. Supp. 3d 138 (D. Mass. 2021); see also Breda v. Cellco P'ship, 934 F.3d 1, 4 n.1 (1st Cir. 2019) (recognizing that "[t]he TCPA also applies to . . . text messages" involving 227(b)(1)(A)). Section 227(c) has similarly been interpreted to include text messages. See Sagar v. Kelly Auto. Grp., Inc., No. 21-cv-10540-PBS, 2021 WL 5567408, at *5 (D. Mass. Nov. 29, 2021). Accordingly, this Court considers the text messages as covered under § 227(c) for the purposes of deciding the motion to dismiss.

As alleged, Menin twice responded "STOP" to text message solicitations from Star Markets (once on June 23, 2023 and again on July 7, 2023), received confirmation that her requests had been received and then continued to receive text messages after those requests over the course of 21 days.  D. 17 ¶¶ 9-11.  Menin also alleges that Star Markets has access to "outbound transmission reports for all text messages sent" advertising their products and a log of "inbound opt-out requests."  Id. at  ¶ 22.  Menin contends that Star Markets failed to institute procedures for maintaining and processing a stand alone opt-out list, by its "refusal to honor" Menin's "repeated opt-out requests."  Id. at  ¶¶ 15, 17.  At this stage, Menin's allegations concerning repeated text messages over the course of three weeks after twice opting-out, combined with the existence of transmission reports and repeated failures to honor her opt-out requests, are sufficient to allege a violation of  §  64.1200(d)(1).  See Eagle v. GVG Cap., LLC, No. 22-cv-00638-SRB, 2023 WL 1415615, at *4 (W.D. Mo. Jan. 31, 2023) (denying motion to dismiss because "it is reasonable to infer that [d]efendant did not have internal procedures regarding do not call requests as required by 47 C.F.R. § 64.1200(d)" based on plaintiff's allegations that she repeatedly responded stop to defendant's text messages); Adam v. CHW Grp., Inc., No. 21-cv-19-LRR, 2021 WL 7285905, at *2, 9 (N.D. Iowa Sept. 9, 2021) (denying motion to dismiss and holding plaintiff's allegations concerning multiple text message received after requesting to opt-out were sufficient to allege a 64.1200(d) violation where plaintiff alleged that defendant's failure to abide by plaintiff's opt-out requests was indicative of a "lack of a written policy for maintaining internal do-not-call procedures," "failure to institute procedures for maintaining a list of persons who request not to receive telemarketing calls," and "demonstrates that [defendant] does not record opt-out requests or place subscribers' names and telephone number[s] on any DNC list at the time the requests are made").

### 2. *Menin Has Sufficiently Alleged That Star Markets Has Failed to Train Personnel Engaged in Telemarketing*

Star Markets asserts that Menin has not sufficiently alleged that Star Markets failed to train their employees in violation of § 64.1200(d)(2). D. 27 at 17-18. Section 64.1200(d)(2) requires that a company train and inform their employees concerning "the existence and use of the do-not-call list." 47 C.F.R. § 64.1200(d)(2). Menin alleges that Star Markets's "refusal to honor [Menin's] opt-out requests demonstrates that [Star Markets] does not provide training to its personnel engaged in telemarketing" and does not maintain or train its employees on its "standalone do-not-call list." D. 17 ¶¶ 16, 17. Combined with the allegations that Star Markets conceivably has access to a transmission log that chronicles opt-out requests, id. ¶ 22, the amended complaint's allegations are sufficient enough to nudge "across the line from conceivable to plausible" that employees may not be trained on the existence of the internal do-not-call list.

Star Markets relies upon Callier v. Caliber Home Loans, Inc., No. 22-cv-49-DB, 2022 WL 16858520, at *6 (W.D. Tex. Nov. 10, 2022) to suggest that Menin must allege "how" she formed her belief to state a violation of § 64.1200(d)(2). See D. 27 at 17. In Callier, the court allowed a motion to dismiss for a violation of § 64.1200(d)(2) where "[p]laintiff bases his claim on the fact that the callers 'knowingly ignored the national DNC registry,' thereby inferring that the callers were not trained on the existence and use of the registry" but did not provide any further details concerning "how" plaintiff formed his belief that the employees were not trained. 2022 WL 16858520, at *6. Callier involved telephone calls where the plaintiff could have conceivably asked the telemarketer callers information concerning their knowledge of the national do not call registry. See id. By contrast, Menin received text messages that presumably do not provide the same access to inquire about an employee's training. See D. 17 ¶ 9. Menin,

9

however, did receive confirmation that her opt-out requests were recorded. See id. ¶¶ 9, 10. At the motion to dismiss stage, Menin alleges sufficient facts to make her claims rise above speculation as her allegations support a reasonable conclusion that Star Markets's staff "were not properly trained in distributing and implementing the do-not-call policy" if the company had such a policy. See Moore v. Pro Custom Solar LLC, No. 21-c-4395, 2022 WL 1092186, at *5 (N.D. Ill. Apr. 12, 2022) (denying motion to dismiss where plaintiff requested to be placed on defendant's "internal do-not-call list, he received written notice that his request was received and granted" and continued to receive phone calls which plausibly indicated a violation of § 64.1200(d)).

        3.    *Whether Star Markets Has Honored Menin's Do-Not-Call Request Within a Reasonable Time*

Star Markets argues that Menin has not sufficiently alleged a violation of § 64.1200(d)(3) because the company honored Menin's request to stop receiving offers and promotions within the thirty days provided under the regulations for compliance. D. 27 at 10-15. In relevant part, that provision provides that a company "must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made" and that this period "may not exceed 30 days."[5]  47 C.F.R. § 64.1200(d)(3).

---

[5] To allege a violation of § 64.1200(d)(3), the plaintiff must show that a company did not have proper procedures in place to record a number to the internal do-not-call registry and to honor the do-not-call request prior to initiating the call. Nece v. Quicken Loans, Inc., No. 16-cv-2605-T-23CPT, 2018 WL 1326885, at *8 (M.D. Fla. Mar. 15, 2018). Menin sufficiently alleges plausible facts that Star Markets did not have proper procedures in place to record an opt-out request based on repeated requests to opt-out of promotional text message, confirmation of Menin's opt-out request and Star Markets's access to a transmissions report that contains a log of all opt-out requests. See D. 17 ¶¶ 9-10, 14-15, 18, 22. Taking these allegations as true, the Court can reasonably infer that Star Markets "failed to institute procedures" prior to initiating the text messages. See Daschbach v. Rocket Mortg., LLC, No. 22-cv-346-JL, 2023 WL 2599955, at *12 (D.N.H. Mar. 22, 2023) (denying motion to dismiss where defendant sent two text messages after plaintiff requested to stop receiving communications).

Star Markets asserts that because Menin alleged that she texted "STOP" on June 23, 2023, and she last received a message on July 14, 2023, the messages were within the thirty-day period for compliance and cannot constitute a cause of action.  D. 27 at 14 (citing D. 17 ¶ 10-11.)  Menin argues that what constitutes a "reasonable time" is a question of fact that cannot be decided on a motion to dismiss.  D. 30 at 4-7.  The Court agrees.  The Court recognizes that text messages sent to individuals who have opted-out beyond thirty days would be a *per se* violation of § 64.1200(d)(3).  See 47 C.F.R. § 64.1200(d)(3).  Here, Menin received multiple text messages twenty-one days after the initial request to be placed on Star Markets's internal do-not-call list but within the maximum thirty-day period.  See D. 17 ¶¶ 9-11.  What constitutes a "reasonable time" is a question of fact because the regulation "does not state that any shorter delay is per se reasonable."  See Delgado v. eMortgage Funding, LLC, No. 21-cv-11401, 2021 WL 4776774, at *5 (E.D. Mich. Oct. 13, 2021) (denying motion to dismiss where "plaintiff allegedly received fourteen additional calls over the four-day period immediately following her request that the calls stop" but within the thirty-day period for compliance).

Star Markets contends that a "reasonable time" means that a company has up to thirty days to comply.  D. 27 at 11-15.  In support, Star Markets argues that § 64.1200(a)(4), which is the regulation promulgated to govern unsolicited facsimile advertisements, contains a different opt-out clause that provides that request must be honored within the "shortest reasonable time" that is "not to exceed 30 days."  D. 27 at 13-14;  47 C.F.R. § 64.1200(a)(4)(v) (stating that "a request not to send future unsolicited advertisements" must be honored within "the shortest reasonable time" that is "not to exceed 30 days").  Still, what constitutes the "shortest reasonable time" is still a question of fact.  Pursuant to those regulations, "a sender would be in violation of the regulation if it could comply with the request in 10 days but waited 29 days to comply."

11

Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc., No. 08-cv-481-BBC, 2009 WL 602019, at *6 (W.D. Wis. Mar. 9, 2009) (granting motion to dismiss because defendant's opt-out notice did not violate § 64.1200(a)(3)(iv) because the notice stated compliance within a "reasonable time" and did not contain the words "within 30 days").

Star Markets has also argued in a notice of supplemental authority that the FCC's recent proposed notice of rulemaking to amend the timeframe to comply with internal do-not-call requests supports its argument that the current iteration of the regulations provides for a safe harbor of up to thirty days to honor do-not-call requests. See D. 41 at 1-2 (citing In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, No. CG02-278, 2024 WL 668031, at *1 (Feb. 15, 2024)); see also D. 38 at 1-2. The new final rule[6] concerning robocalls and robotexts provides that opt-out requests must be honored "within a reasonable time from the date that the request is made, not to exceed 10 business days after receipt of the request." Strengthening the Ability of Consumers To Stop Robocalls, 89 Fed. Reg. at 15758. Star Markets reasons that the FCC acknowledges that the current rules provide no specific timeframe for honoring do-not-call requests and the new rule "substantially reduces the maximum period allowed" for honoring revocation requests. D. 41 at 1-2; see In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 2024 WL 668031 at *7. In support of the new rule, however, the FCC recognized that opt-out requests can be processed "quickly" and well short of thirty days. See id. at *6. The FCC further stated that requests should be honored "as soon as practicable as a best practice." Id. at *6 n.40. Contrary to Star Markets's claims, the new FCC rulemaking further substantiates that under the current iteration of the regulations,

---

[6] The FCC issued a notice of the final rule on March 5, 2024 which is the same as the proposed rule. See Strengthening the Ability of Consumers To Stop Robocalls, 89 Fed. Reg. 15756-01, 15758, 2024 WL 915454, at *1 (Mar. 5, 2024) (to be codified at 47 C.F.R pt. 64) .

what constitutes a "reasonable time" of compliance is a factual question. See Boger v. Citrix Sys., Inc., No. 19-cv-01234-PX, 2020 WL 1033566, at *5 (D. Md. Mar. 3, 2020) (denying motion to dismiss based on two calls received after a do not call request and reasoning that "even if [plaintiff] had first requested placement on the Do-Not-Call list on May 3, 2016, and [defendant] waited until May 25, 2016 to honor the request, the count still survives dismissal" because the provision "does not, as [defendant] suggests, create a safe harbor for follow up calls places within thirty days after the first call").

Barr v. Macys.com, LLC does not warrant a contrary conclusion. Barr, 2023 WL 6393480, at *5-6 (granting motion to dismiss because plaintiff's "conclusory allegation" that defendant must not have sufficient internal procedures and internal registry based on receipt of one text message after opting-out was insufficient). In Barr, the Court held that the receipt of a single text message one business day after a request not to be contacted was not a violation of section 64.1200(d)(3). Id. at *6. In granting the motion to dismiss, the Court recognized that receiving one text message after plaintiff's request would not be considered unreasonable and therefore was not a § 64.1200(d)(3) violation. Id.; see Orsatti v. Quicken Loans, Inc., No. 15-cv-09380-SVW, 2016 WL 7650574, at *7 (C.D. Cal. Sept. 12, 2016) (granting motion to dismiss for failure to allege a § 64.1200(d)(3) violation because "[t]he only other call the [p]laintiff allegedly received from the [d]efendant also occurred in June of 2015"). Here, Menin alleged receiving at least three text messages over the course of twenty-one days after her initial opt-out request. D. 17 ¶¶ 9-11. Whether three messages over the course of this time period constitutes "a reasonable time" is not suitable to determine on a motion to dismiss. See Buja v. Novation Cap., LLC, No. 15-cv-81002, 2017 WL 10398957, at *6 (S.D. Fla. Mar. 31, 2017) (denying motion to dismiss

because the court could not determine as a matter of law whether plaintiff receiving two calls up to three weeks after requesting to be placed on the internal do not call list was reasonable).

For the aforementioned reasons, the Court concludes that Menin has stated a plausible TCPA claim.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Star Markets's motion to dismiss, D. 26. Given the Court's ruling on the motion to dismiss, the Court denies Star Markets's motion to stay discovery, D. 28, as moot.

**So Ordered.**

<u>/s Denise J. Casper</u>
United States District Judge